FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT** 2005 SEP 16  P 12: 37

| | | |
|---|---|---|
| LUIS FERNANDEZ | : | PRISONER U.S. DISTRICT COURT |
| | : | NO.: 3:01 CV 1807 (JBA) CONN |
| v. | : | |
| | : | |
| ALEXANDER, ET AL | : | SEPTEMBER 15, 2005 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DANBURY DEFENDANTS' MOTION TO DISMISS

Pursuant to D.Conn.L.R. 7, the defendants, DETECTIVE R. HALLAS,

DETECTIVE NOLAN, DETECTIVE RAMOS, DETECTIVE MARK TROHALIS,

DETECTIVE JOHN MERULLO, DETECTIVE SGT. FISHER, OFFICER ROBERT

WILLIAMS CHIEF ROBERT PAQUETTE, submit the following memorandum of law in

support of their motion to dismiss dated September 15, 2005.

**I.    BACKGROUND**

**A.    PLAINTIFF'S CRIMINAL BACKGROUND AND CIVIL**
**LITIGATION CONCERNING THE SAME**

The plaintiff, Luis M. Fernandez, is no stranger to the legal system, both

as a plaintiff and as a criminal defendant. A discussion of his litigiousness is

important as background to the reasons for dismissing this case.

**1.    *Fernandez v. Paquette, et al., 3:02 CV 2090 (JBA).***

In July 1999, the Danbury Police Department began an investigation of Angel

Ramirez, also known as Sandy, and Luis Fernandez, also known as Alex. Detective

Trohalis met with an informant who stated that he had personal knowledge that Sandy

and Alex were selling cocaine in Danbury, Connecticut. Thereafter, Detective Trohalis

utilized this informant to make controlled purchases of cocaine from either Sandy or Alex. Based on the success of the information in making purchases, further investigation was made of Sandy and Alex. [1]

In October 1999, Detective Trohalis met with a second informant who stated that he had personal knowledge that Sandy and Alex were selling cocaine in Danbury, Connecticut, that Sandy lived in the area of Osborne Street and drove a white sports utility vehicle ("SUV") and Alex drove a brown Honda Accord ("Honda"). Thereafter, in October and November, Detective Trohalis had the second informant make several controlled purchases from either Sandy or Alex. The second informant identified Sandy as Angel Ramirez. The purpose of the controlled purchases was to identify the operation of the narcotics sales and prepare for search warrants for the vehicles involved as well as the place where Sandy and Alex lived. After search warrants had been applied for and approved, Sandy and Alex changed their method of operation.

Additional surveillance and controlled purchases were made and Detectives Trohalis and Merullo applied for search warrant for the apartment and Angel Ramirez. In the affidavit accompanying the warrant application, Detectives Trohalis and Merullo averred that their five-month investigation supported their belief that probable cause existed that Angel Ramirez, also known as Sandy, and a Hispanic male known as Alex, were selling cocaine together in the City of Danbury. Detectives Trohalis and Merullo

---

[1]The facts of this matter are taken from the Court's Ruling and Order, Doc. #108 in *Fernandez v. Paquette, et al.*, 3:02 CV 2090 (JBA). The Court is empowered to take judicial notice of its own decision in a related matter. The defendants in that case were Chief Robert Paquette, Detective Sgt. Fisher, Detective Ramos, Detective John Merullo, Detective John Krupinsky, Detective Mark Trohalis, Officer Karl Murphy Officer Selner and Officer Riolo. Judgment entered in favor of Defendants, Doc. #109. While Fernandez took an appeal to the Second Circuit, the same was dismissed.

described Alex as a 5' 6" tall Hispanic male with a thin build and a scar on his left cheek. Detectives Trohalis and Merullo also believed that probable cause existed that Sandy and Alex used a specific telephone pager to facilitate their cocaine sales, that they used a Pathfinder to make deliveries of the cocaine and that they used the apartment to store cocaine and the proceeds from drug sales.

On January 6, 2000, a neutral magistrate of the Danbury Superior Court found probable cause for the issuance of search and seizure warrants for the apartment and Angel Ramirez. The judge also determined that the requirement that a copy of the affidavit in support of the warrant be given to the owner or person named in the affidavit should be waived because delivery of the affidavit would jeopardize both the safety of the informant named in the affidavit and any continuing investigation of the subjects of the affidavit.

Detectives Fisher, Ramos, Merullo, Krupinsky, Trohalis and Officer Murphy executed the warrant on January 7, 2000. They set up surveillance of the apartment and waited until both Sandy and Alex left the location in the Pathfinder where it was stopped. Sandy and Alex were detained and search incident to arrest and keys were taken to open the apartment.

At the apartment, the officers executed the warrant and quickly discovered a shoebox filled with various plastic bags containing white rock-type substances and powder, an electronic scale, cash and personal checks made out to cash. Detective Krupinsky field-tested one of the bags containing a white rock type substance and the

substance tested positive for cocaine. Therefore, Sandy and Alex were transported to the police station and place them in custody.

A continued search revealed more contraband that implicated both Sandy and Alex, including a loaded 9mm handgun under the mattress of the bed, two boxes of ammunition, a list of drug records, $700.00 in cash, a plastic bottle stuffed in a shoe in the closet containing thirty-six bags of white powder and fifteen plastic bags of white powder in a pocket of a shirt in the bedroom. They located two electronic scales in a cabinet in the kitchen and six boxes of plastic bags. In another bedroom, the detectives found one shoebox containing a plant-like material and another shoebox containing a case with over $400.00 in cash, and a shoe containing $11.00 in cash. The plant-type material tested positive for marijuana.

Importantly, the detectives also found an envelope addressed to Alex Edwart, a Spanish passport for Luis Manuel Fernandez Arias, a Florida driver's license, a New York learner's permit and Dominican Immigration papers under the same name, a Connecticut Motor Vehicle Department title and registration papers and a Social Security card in the name of Luis Fernandez. The detectives also found a Bell Atlantic Mobile cellular telephone bill in the kitchen in the name of Luis Fernandez in the amount of $891.00. These documents substantiated that "Alex" was actually Luis M. Fernandez.

The plaintiff was charged with one count of possession of narcotics in violation of Connecticut General Statutes § 21a- 27(a), one count of sale of certain illegal drugs in violation of Connecticut General Statutes § 21a-278(a), one count of possession of a controlled substance within 1,500 feet of a school in violation of Connecticut General

Statutes § 21a- 278a(b), and one count of possession of a controlled substance greater

than four ounces in violation of Connecticut General Statutes § 21a-279(c). The plaintiff

pleaded *nolo contendere* to count one and the judge found him guilty. The judge

sentenced him to an eight year suspended sentence with four years of probation.

While incarcerated, Fernandez filed a civil action against a number of Danbury

police officers, claiming that his civil rights were violated. Following some discovery, the

defendants filed a motion for summary judgment which was granted. The Court, by

*Arterton, J.*, issued a comprehensive Ruling and Order on this subject which dismissed

the plaintiff's claims. Fernandez, unsatisfied, appealed. A panel of the Court of Appeals

for the Second Circuit dismissed his appeal on August 5, 2005.

### 2.    *State v. Fernandez*, 76 Conn.App. 183, 818 A.2d 877 (2003).[2]

In early October, 2000, Fernandez became the subject of a police narcotics

investigation. Officers from the Danbury police department conducted a series of

surveillances of the defendant, and were able to confirm his physical description and the

facts that he used the nickname "Alex," conducted his business through the use of a

pager and primarily drove a white Honda Civic with a license plate that read "998PLC."

Beginning on October 13, 2000, the Danbury police began a series of controlled

purchases from Fernandez, first by showing Officer Thomas Barcello a photograph of

Fernandez to be able to identify him. Barcello then was provided with his pager number,

a body transmitter and $100 in cash. Barcello then proceeded to call Fernandez's pager

---

[2] The facts discussed in this section are taken from the court's opinion in *State v. Fernandez*, 76 Conn. App. 183, 818 A.2d 877 (2003).

number. Fernandez returned the page and told Barcello to go to the McDonald's parking lot in Danbury. After Barcello arrived at the parking lot, a white Honda Civic with a license plate reading "998PLC" entered the lot. Barcello left his vehicle, approached Fernandez's vehicle and said, "Can I get two?" whereupon Fernandez handed Barcello two small plastic bags of powder cocaine. That routine was repeated on October 17 and twice on October 20, when controlled buys were made at different locations.

On October 27, 2000, the Danbury police obtained an arrest warrant for Fernandez and planned to execute it upon observing him conducting a sale with a regular buyer. The police conducted surveillance of him throughout the day. At approximately 6:20 p.m., Fernandez arrived at the Bradlee's parking lot where he was observed making a sale to Laurie LeBlanc. Upon seeing the sale, officers blocked Fernandez's avenues of escape and approached his vehicle. As the officers approached, Fernandez attempted to leave the scene, but his route was blocked by a police cruiser. The police searched LeBlanc and found four small plastic bags of powder cocaine in his possession. Fernandez then was placed under arrest.

Fernandez charged with five counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), five counts of possession of narcotics in violation of General Statutes § 21a-279 (a) and one count of violation of probation in violation of General Statutes § 53a-32. Fernandez was tried on the drug sale and possession charges simultaneously with the violation of probation proceedings which he had received as a result of the prior arrest on January 7, 2000. The jury found Fernandez guilty of five counts of sale of narcotics by a person who is not drug-

dependent and five counts of possession of narcotics. The court then found that

Fernandez had violated his probation. Fernandez was sentenced to a total effective

term of twenty-eight years imprisonment. *State v. Fernandez*, 76 Conn. App. 183, 818

A.2d 877 (2003).

Following his conviction and sentencing, Fernandez appealed, but his conviction

and his sentence were affirmed. The Connecticut Supreme Court declined to grant

certification. *State v. Fernandez*, 76 Conn. App. 183, 818 A.2d 877, *cert. denied*, 264

Conn. 901, 823 A.2d 1220 (2003).

## B.    RELATED CIVIL ACTIONS

The plaintiff is no stranger to the court, civil or criminal. He has numerous cases

filed or pending in this District.

### 1.    *Fernandez v. Danbury Police Dept., et al.*, 3:01cv1201 (SRU).

Prior to filing the case at bar, the plaintiff filed a civil action against Detectives

Merullo and Trohalis along with the Danbury Police Department, the City of Danbury

and Universal Studios. That case include claims relating to the plaintiff's October 2000

arrest for selling narcotics and sought to hold Universal Studios liable for making the

movie "Scarface" which portrayed selling drugs as a glamorous profession. *See

Fernandez v. Danbury Police Dept., et al.*, 3:01cv1201 (SRU). This Court examined that

case in the present case. *See Fernandez v. Alexander, et al*, Ruling and Order dated

May 21, 2004, Doc. #12. That case was dismissed by Fernandez's own voluntary

dismissal on June 25, 2002. *See Fernandez v. Danbury Police Dept., et al.*, 3:01cv1201 (SRU), Doc. #23.

### 2. *Fernandez v. Paquette, et al.*, **3:02cv2090 (JBA).**

The factual background of this case is discussed in Section I.A.1. It is notable that this lawsuit was filed after the present case and named all or nearly all of the officers that Fernandez has proposed to amend into this case. When *Fernandez v. Paquette, et al.*, 3:02cv2090 (JBA) was filed, Fernandez unquestionably knew the identity of these officers and his claim that they had violated his rights with respect to the investigation that began in June 1999 and lead to his arrest in October 1999. *Fernandez v. Paquette, et al.*, 3:02cv2090 (JBA) was filed on November 25, 2002. The Court observed in its Ruling and Order on summary judgment, (Doc. #108) that Fernandez failed to plead or even mention that he was subject to excessive force during the October 1999 arrest.  Summary judgment was granted in favor of all defendants and his appeal was dismissed.

### C.    **THE PRESENT CASE.**

In what began as a lawsuit against Jade Alexander and BRT Self-Storage, neither who appear to be defendants in the Amended Complaint, Fernandez filed an amended complaint that complaints about the investigation that lead to his arrest, and his arrest, all of which was the subject of the state criminal action. Notably, Fernandez filed this Amended Complaint after it was obvious that he was not going to prevail in *Fernandez v. Paquette, et al.*, 3:02cv2090 (JBA).

Pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), The defendants now move to dismiss because the amended complaint (1) is barred by the statute of limitations, (2) is barred by the law of the case, (3) is barred by *res judicata*, (4) was not served upon the defendants within 120 days of filing and (5) is barred by the doctrine of *Heck v. Humphrey*.

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted. See *Fischman v. Blue Cross Blue Shield*, 755 F. Supp. 528 (D.Conn. 1990). The motion must be decided solely on the facts alleged. *See Goldman v. Belden*, 754 F.2d 1059, 1065 (CA2 1985). A court must assume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Such a motion should be granted only where no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45 (1957). The issue is not whether the plaintiff will prevail, but whether he should have the opportunity to prove his claims. *Id.*

Determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes is not limited to the factual allegations in the complaint but may include consideration of "documents attached to the complaint as exhibits or incorporated in it by reference, to

matters of which judicial notice may be taken [under Fed.R.Evid. 201], or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v.. Am. Film. Techs. Inc.*, 987 F.2d 142, 150 (CA2 1993); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (CA2 1991); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (CA2 1991). Judicial notice is permitted of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The Court may judicially notice prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case *sub judice*, especially where a *res judicata* defense is predicated on facts not disputed in the earlier litigation. *See Day v. Moscow*, 955 F.2d 802, 811 (CA2 1992); *Liberty Mut. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-1389 (CA2 1992); *see also* 1 WEINSTEIN'S FEDERAL EVIDENCE § 201.12[3] at 201-29 to 201-34 , 201-40 (2d ed.2003).

The defense of statute of limitations can be raised by a motion to dismiss. *Hitchcock v. deBruyne* 377 F.Supp. 1403, \*1404 (D.C.Conn. 1974), *citing Fouts v. Fawcett Publications*, 116 F.Supp. 535 (D.Conn.1953). Similarly, Fed.R.Civ.P. 12(b)(6) is an appropriate procedural vehicle for testing a complaint with the defense of *res judicata. See Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (CA2 2000); *Conepco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (CA2 2000); *Day v. Moscow*, 955 F.2d 807, 811 (CA2 1992).

Pursuant to Fed.R.Civ.P. 12(c), judgment on the pleadings may be granted when the material facts are undisputed and judgment on the merits is possible merely by considering the contents of the pleadings. *Seller v. M.C. Floor Crafter, Inc.*, 842 F.2d 639, 642 (CA2 1988). In considering such a motion, the Court must accept as true all of the well-pleaded facts alleged in the Citizen Suit and may not dismiss the action unless the Court is convinced that the Citizen Suit Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *George C. Frey Ready-Mixed Concrete, Inc., v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (CA2 1977), *quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Accord Bloor v. Carr, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (CA2 1985); *LoSacco v. City of Middletown*, 745 F.Supp. 812, 814 (D.Conn.1990) (dismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim). Courts have said that they accept the truth of "facts" but not "legal conclusions." 5 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL SECTION 1357 (1969).

**B.   IT IS THE LAW OF THE CASE THAT THE CLAIMS AGAINST THE DANBURY DEFENDANTS IN THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THEY DO NOT RELATE BACK TO THE INITIAL FILING OF THE LAWSUIT AND ARE THEREFORE BARRED BY THE STATUE OF LIMITATIONS.**

At the time the original complaint dated August 25, 2001 was filed in this action, the only defendants were Alexander and BRT Self Storage. *See* Doc. #3. More than 3 years later, the plaintiff filed a motion to reopen with a proposed amended complaint. The proposed amended complaint included a number of City of Danbury police officers.

11

**1.    *The Applicable Statute Of Limitations Is A Complete Bar To The Plaintiff's Federal Claims Against The Danbury Defendants.***

Federal claims brought pursuant to 42 U.S.C. §1983 are governed by a three-year statute of limitations. *See Lounsbury,v Jeffries*, 25 F.3d 131, 134 (CA2 1994) (Conn.Gen.Stat. 52-577 is the appropriate civil rights limitations period for actions under 42 U.S.C. § 1983). As set forth in the proposed amended complaint, all of the incidents described in the proposed amended complaint occurred on October 27, 2000. The first amended complaint, Doc. # 20, as well as any subsequent amended complaint, Docs. ##, 22 and 31, were filed after October 27, 2000. Based on the mailbox rule applicable to prisoners, no filing could have occurred before December 12, 2003. Therefore, all the claims in the amended complaint that named the City of Danbury defendants for the first time were filed beyond the limitations period and are time-barred. *See* Ruling and Order, Doc. #12.

Furthermore, Fed.R.Civ.P. 15 does not allow the addition of new parties after the expiration of the statute of limitation except under specific circumstances. Fernandez cannot meet the standards in Rule 15 to save this proposed amendment. Fernandez had notice of names of these officers and had filed two lawsuits against them – *See Fernandez v. Danbury Police Department*, 3:01cv1201 (SRU) and *Fernandez v. Paquette, et al*, 3:01cv2090 (JBA). Such an omission in the face of two other lawsuits against them is undoubtedly a matter of choice and not a mistake. *See* Ruling and Order, Doc. #12. Therefore, the federal claims arising from the October 27, 2000 incident are barred by applicable statute of limitations.

Moreover, these very issues were considered and ruled upon by the Court in a

Ruling and Order dated May 21, 2004. See Doc. #12. This decision is the law of the

case.

> Ordinarily, previous rulings become the "law of the case" and, as a
> prudential matter, will not be revisited. However, the law of the case
> doctrine is a discretionary rule that "does not limit a court's power to
> reconsider its own decisions prior to final judgment." *Virgin Atl. Airways
> Ltd. v. Nat'l. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992). "The major
> grounds justifying reconsideration are an intervening change of controlling
> law, the availability of new evidence, or the need to correct a clear error or
> prevent manifest injustice." *DiLaura v. Power Auth. of State of N.Y.*, 982
> F.2d 73, 76 (2d Cir.1992) (internal quotation marks and citation omitted).

*Royal Ins. Co. of America v. Zygo Corp.*  349 F.Supp.2d 295, *304 (D.Conn.,2004)

There has not been an intervening change in the controlling law. No new

evidence has been presented which would suggest revisiting this ruling. There is no

need to correct clear error or prevent manifest injustice. Therefore, the amended

complaint is barred by the statute of limitations as to all claims against the City of

Danbury defendants. Accordingly, the defendants' motion to dismiss should be granted

as to the plaintiff's federal claims.

> **2.   *In Addition, The Plaintiff's Failure To Serve The
> Defendants Within The State Statute Of Limitations
> Period Is A Complete Bar To The Plaintiff's State Law
> Claims Against The Danbury Defendants.***

While the prior analysis covers the state law claims in the plaintiff's amended

complaint as none of the state law claims has a statute of limitations period greater than

the federal law claims, the failure to serve within the limitations period is fatal to the

state law claims.  When a federal court adjudicates state law claims, "'state statutes of

limitations govern the timeliness of state law claims', and state law 'determines the related questions of what events serve to commence an action and to toll the statute of limitations'." *Diffley v. Allied-Signal, Inc.,* 921 F.2d 421, 423 (2d Cir.1990), *quoting Personis v. Oiler,* 889 F.2d 424, 426 (2d Cir.1989); *accord Converse v. General Motors Corp.,* 893 F.2d 513 (2d Cir.1990) ("It is well established that the doctrine *175 enunciated in *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applies to the manner in which a diversity action is considered commenced for purposes of state statutes of limitations."); *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). . . . Connecticut law determines whether filing or service of the complaint "commences" an action for tolling purposes. *See id. See Wilson v. Midway Games, Inc.*198 F.Supp.2d 167, *174 -175 (D.Conn.,2002)

With respect to the state law claims, Fernandez's action is also barred. "[T]he Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statutes of limitations." *Converse,* 893 F.2d at 516, *citing, inter alia, Consolidated Motor Lines, Inc. v. M & M Transp. Co.,* 128 Conn. 107, 20 A.2d 621 (1941) and *Jencks v. Phelps,* 4 Conn. 149, 152, 1822 WL 7 (1822). Under this standard, any effective service by Fernandez (to which there is no evidence) after December 13, 2003 is after the applicable time limit imposed by state statutes of limitations. *Accord, Wilson v. Midway Games, Inc.* 198 F.Supp.2d 167,175 (D.Conn. 2002). Indeed, Fernandez did not move to amend until too late in the game and the Court determined that those claims did not relate back to the filing of the original Complaint. *See* Ruling and Order dated May 21, 2004, Doc. #12. Therefore, all of the

14

plaintiff's state law claims are barred by the applicable statute of limitation and should be dismissed. Accordingly, the defendants' motion to dismiss should be granted as to the plaintiff's state claims.

### C. THE AMENDED COMPLAINT IS BARRED BY *RES JUDICATA* AND SHOULD BE DISMISSED AS TO THE DANBURY DEFENDANTS BECAUSE THE PLAINTIFF HAD THE OPPORTUNITY TO RAISE THOSE CLAIMS IN TWO OTHER LAWSUITS AGAINST THE SAME DEFENDANTS OR THOSE IN PRIVITY.

"*Res judicata*", or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); Burgos v. Hopkins, 14 F.3d 787, 789 (CA2 1993). "*Res judicata* . . . makes a final, valid judgment conclusive on the parties, and those in privity with them as to all matters, fact and law, [that] were or should have been adjudicated in the proceeding." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (CA2 2000). To establish the defense of res judicata, a party must show that: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff or those in privity with him; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Allen*, 449 U.S. at 94.

The following facts are undisputed:

- Plaintiff is the same in both cases.

- The defendants are the same or are in privity with defendants who were involved in litigation with the plaintiff.

15

- The plaintiff filed two actions in addition to the present case.

- When the present case was dismissed, the plaintiff litigated *Fernandez v. Paquette, et al*, 3:02cv2090 and went to judgment against him.

- Plaintiff had filed a prior case referencing the conduct at issue in this case in *Fernandez v. Danbury Police Dept., et al.*, 3:01cv1201 (SRU) and undoubtedly knew of his claims at that time.

- Plaintiff voluntarily dismissed *Fernandez v. Danbury Police Dept., et al.*, 3:01cv1201 (SRU) on June 25, 2002.

After the voluntary dismissal of the first case, 01cv1201, and the dismissal of the present case before it was reopened, plaintiff could have and should have brought the claims regarding the search of the self-storage facility and his arrest as he believed it implicated the Danbury defendants in the case that was pending, 02cv2090. Rather than do so, he ignored that case until he lost. All of these issues could have been litigated in that case, or in 01cv1201. They were not and Fernandez cannot now complain. Accordingly, the defendants' motion to dismiss should be granted.

**D.    THE PLAINTIFF HAS FAILED SERVE ANY OF THE DANBURY DEFENDANTS WITHIN 120 DAYS OF FILING OR WITHIN THE TIME SPECIFIED BY THE COURT; ACCORDINGLY, THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED.R.CIV.P. 4(M).**

However, even assuming Fernandez commenced an action against the Danbury defendants by filing with the Court, Fernandez did not make service upon the defendants within the time required by Rule 4(m). Rule 4(m) provides that service must

16

be made upon a defendant within 120 days after the filing of the complaint, or within a

specified time as directed by the Court. Fed.R.Civ.P. 4(m). Rule 4(m) states, in relevant

part:

> Time Limit for Service. If service of the summons and complaint is not
> made upon a defendant within 120 days after the filing of the complaint,
> the court, upon motion or on its own initiative after notice to the plaintiff,
> shall dismiss the action without prejudice as to that defendant or direct
> that service be effected within a specified time; provided that if the plaintiff
> shows good cause for the failure, the court shall extend the time for
> service for an appropriate period.

Fed.R.Civ.P. 4(m).

It is undisputed that Fernandez did not properly serve the defendants within 120

days of the filing of his Amended Complaint. The action was barred at the time the

Amended Complaint was filed for the first time. Therefore, the action should be

dismissed. Good cause does not exist to extend this time due to Fernandez's repeated

failures to make service and duplicitous filing of multiple lawsuits.

Courts have interpreted Rule 4(m) to allow a Court to extend the period for Rule

4(m) service "when the plaintiff can show good cause for the failure to serve within 120

days ••• [or] if good cause is lacking, the court may extend the time, in its discretion."

*Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662, 666 (D.Vt.1996); *see also*

*Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (CA3 1995) (discussing two-

part inquiry).

Several courts have held that a court may extend the time for Rule 4(m) service

when the re-filed complaint would be barred by the statute of limitations. *See*

Fed.R.Civ.P. 4(m), advisory committee notes (1993 amendment) *Fish v. Bread Loaf*

*Constr. Co.,* 133 F.3d 907 (unpublished opinion), 1998 WL 29640 at *2 (2d Cir.1998) (district court may, in its discretion, extend the 120 day period if statute of limitations would bar re-filed action); *Petrucelli,* 46 F.3d at 1305-06 (same); *Goodstein,* 167 F.R.D. at 666-67 (same).

Despite the discretion afforded to the court, the Advisory Notes to Rule 4(m) indicate that discretion need only be extended to the diligent.[3] Also as noted above, Fernandez filed his complaint naming the Danbury defendants for the first time outside the applicable limitations periods for his claims against them and did not effect proper service within 120 days. The Amended Complaint was untimely at the time it was filed, irrespective of any extension of 120 days to serve the complaint.

The Court should find that good cause does not exist to extend the time for service, because Fernandez did not make reasonable efforts to effect service and the serious prejudice to the defendants. *See Goodstein,* 167 F.R.D. at 665-66. Despite filing two other lawsuits, Fernandez never put the defendants on notice of the 2001 lawsuit until after he was losing and did in fact lose the parallel action. This is not the case where a few days would make a difference – at the time the first amended complaint was filed, it was untimely and outside the limitations period.

---

[3] If the plaintiff has not been diligent, the court will dismiss the complaint for failure to serve within 120 days, and the plaintiff will be barred from later maintaining the cause of action because the statute of limitation has run. A dismissal without prejudice does not confer upon the plaintiff any rights that the plaintiff does otherwise possess and leaves a plaintiff whose action has been dismissed in the same position as if the action had never been filed. If, on the other hand, the plaintiff has made reasonable efforts to effect service, then the plaintiff can move under Rule 6(b) to enlarge the time within which to serve or can oppose dismissal for failure to serve. A court would undoubtedly permit such a plaintiff additional time within which to effect service. Thus, a diligent plaintiff can preserve the cause of action. This result is consistent with the policy behind the time limit for service and with statutes of limitation, both of which are designed to encourage prompt movement of civil actions in the federal courts.

Accordingly, the defendants' motion to dismiss should be granted.

E.    **THE PLAINTIFF'S FEDERAL CLAIMS ARE BARRED BY THE APPLICATION OF *HECK V. HUMPHREY*, 512 U.S. 477, 114 S.CT. 2364, 129 L.ED.2D 383 (1994).**

The defendants contend that Fernandez claims predicated upon 42 U.S.C. §1983 that call into question his conviction and/or plea are barred by the holding in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, a prisoner filed a Section 1983 suit seeking money damages for actions taken by the state police and county prosecutor pursuant to his arrest and prosecution. *See Heck*, 512 U.S. at 479. The Supreme Court held that such a damages action could not proceed because, if successful, it necessarily would imply that the prior conviction was invalid. *Heck* then established a new rule:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87 (footnote omitted).

The Supreme Court subsequently has extended the *Heck* rule, applying its holding to claims for declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Fernandez's Amended Complaint does both.

In his amended complaint, Fernandez complains that he was arrested without probable cause, that the arresting officers mislead the court when applying for search warrants (in many different ways) and seeks a variety declaratory relief. Fernandez took a state court appeal and his conviction was upheld. The Connecticut Supreme Court declined to grant certification for review. *See State v. Fernandez*, 76 Conn. App. 183, 818 A.2d 877, *cert. denied*, 264 Conn. 901, 823 A.2d 1220 (2003). Therefore, allowing Fernandez's Amended Complaint to proceed would call into question his state criminal conviction. That is not permitted by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Accordingly, the plaintiff's Amended Complaint must be dismissed and the defendants' motion to dismiss should be granted.

## III.    <u>CONCLUSION.</u>

For the reasons set forth above, the defendants pray that their motion to dismiss is granted.

20

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
DETECTIVE R. HALLAS, DETECTIVE
NOLAN, DETECTIVE RAMOS, DETECTIVE
MARK TROHALIS, DETECTIVE JOHN
MERULLO, DETECTIVE SGT. FISHER,
OFFICER ROBERT WILLIAMS CHIEF
ROBERT PAQUETTE,

/s/ John J. Radshaw, III
John J. Radshaw III, ct19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (Fax)

## CERTIFICATION

     This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following pro se party this 15th day of September 2005.

Mr. Luis Fernandez
Inmate Number 279900
MacDougall-Walker
  Correctional Institution
1153 East Street, South
Suffield, CT 06080

James V. Minor, Esquire
City of Stamford
Office of Legal Affairs
888 Washington Boulevard
Stamford, CT  06904-2152

/s/ John J. Radshaw, III
John J. Radshaw, III