**Westlaw.**

Not Reported in A.2d                                                                      Page 1
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Madeline BIRARELLI,
v.
Gerald WRIGHT et al.
No. CV020389534S.

June 7, 2002.

MELVILLE, J.

*1 This case arises from a series of financial transactions among former friends. Before the court is a petition requesting a **prejudgment remedy**. Madeline Birarelli, the plaintiff, has filed this application for a **prejudgment remedy** against three defendants, Gerald Wright, Linda Wright and David Nyden.

The facts of the case are intertwined with the life and death of two fruit and produce companies with which Mrs. Wright was associated. The testimony reveals that Mrs. Wright had once been a partner at a fruit and produce company named L. Bernstein & Sons (Bernstein). At some point in 1991, the Bernstein partners had a falling out and litigation ensued. Mrs. Wright still desired to own and operate a produce company though she testified that she was negotiating a settlement that could possibly have required her to agree to a non-compete clause within the settlement.

In order to obtain capital for a new produce company, she approached the plaintiff who had, at that point, just recently gained funds from her deceased husband's life insurance policy. Although there is conflicting testimony on who approached the plaintiff about a loan, the court finds that Mrs. Wright approached the plaintiff for the loan. [FN1] Mrs. Wright needed $55,000 in order to start her own fruit and produce business and told the plaintiff why she needed the money. The court finds that the plaintiff agreed to loan the funds to Mrs. Wright in exchange for two promissory notes. Each note, prepared by Mrs. Wright and dated January 30, 1992, is for the amount of $55,000 and provides for 8% or 1.5% over prime, whichever is higher, per annum interest. Both notes provided that the money would be due two years from the date thereof. One note was signed by Mrs. Wright. The second note was signed by Andrew Skarupa. [FN2] Skarupa, besides signing the note, was to contribute to the operation of the new produce business.

> FN1. "It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence ... Where testimony is conflicting the trier may choose to believe one version over the other ... as the probative force of the evidence is for the trier to determine ... Credibility must be assessed ... not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude ..." (Citations omitted; internal quotation marks omitted.) *Briggs v. McWeeny,* 260 Conn. 296, 327 (2002). These standards apply to **prejudgment remedy** hearings. See *Micci v. Thomas,* 55 Conn.App. 14, 16, 738 A .2d 219 (1999). The court concludes that Mrs. Wright approached the plaintiff because, on the stand, both the plaintiff and Mrs. Wright remembered that Mrs. Wright was present when the loans were requested. Although the passage of time has dulled the memories of the parties as to whether any other person was present, the court, in its discretion, finds the motivations of the plaintiff more believable and, hence, credits plaintiff's testimony that Mrs. Wright asked for the money.

> FN2. The plaintiff does not claim that she is owed more than $55,000 on this transaction. The plaintiff, however, could not articulate why Mrs. Wright and Skarupa each signed a note. The court's best guess is that such a maneuver would hold Mrs. Wright and Skarupa jointly and severally liable in the case of default.

The plaintiff surrendered a check in the amount of $55,000. She made the check payable to Skarupa. Her testimony indicates that she did this because Mrs. Wright told her that she could not own anything in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

Not Reported in A.2d                                                                                                                         Page 2
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

her own name because of her impending bankruptcy. [FN3] The day he received the check, Skarupa filed a trade name certificate in the town of Bridgeport indicating that he would be doing business as County Produce.

> FN3. Gerald and Linda Wright did indeed file for bankruptcy on or around March 24, 1992, almost two months after plaintiff's check was issued.

Three events then happened over the next four months. First, the settlement of the Bernstein litigation was never concluded because the other participant filed for his own bankruptcy. Second, the United States Department of Agriculture, under the authority granted it by the Perishable Agricultural Commodities Act (PACA), sanctioned Mrs. Wright for defaulting on payments to suppliers and, consequently, forbade her from affiliating with any produce business. Third, over the course of the next few months, Mrs. Wright, the plaintiff and Nyden engaged in a series of "discussions" about what to do with County Produce. From these discussion sprang the idea to incorporate County Produce.

*2 During this time, the plaintiff gave more cash to Mrs. Wright totaling $25,000. In March and April 1992, the plaintiff drafted five checks, each made out to Linda Wright: (1) for $7000 dated March 1, 1992; (2) for $5000 dated April 2, 1992; (3) for $5000 dated April 9, 1992; (4) for $3000 dated April 9, 1992; (5) for $5000 dated April 23, 1992. All the checks were cashed and not deposited. Coinciding with these checks, the plaintiff took out a $25,000 home equity loan so that she would not deplete her bank account.

On June 1, 1992, Nyden and the plaintiff signed County Produce's certificate of incorporation as incorporators. The certificate was filed on June 18, 1992. The organization and first biennial report, also filed with the certificate, indicates that Nyden was the president and treasurer of County Produce and that the plaintiff was the vice president and secretary of County Produce. The report also indicates that Nyden and the plaintiff were directors of County. While testifying, the plaintiff did not recall signing these documents, although she remembered signing documents that were placed before her, and did not recall being either a director or officer of County Produce.

Based on the paucity of evidence showing that plaintiff understood the legal significance of her signing these papers and by her total lack of business experience, the court concludes that plaintiff did not fully comprehend the legal consequences of signing these papers.

In November of 1992, Mrs. Wright requested more money from the plaintiff in the amount of $15,000. The court finds that the plaintiff made a check out to County Produce because Mrs. Wright again claimed that she could not have anything in her own name.

At some point before November 2, 1993, Skarupa decided that he no longer wanted to be affiliated with County Produce and that he did not wish to be responsible for the $55,000 promissory note. Mrs. Wright told the plaintiff that Skarupa wanted to get back the note he had signed. The plaintiff was not comfortable letting Skarupa out of his obligation. To settle the matter, Nyden volunteered to sign a different promissory note if the plaintiff would give the promissory note back to Skarupa or destroy it. The plaintiff agreed and Mrs. Wright prepared a new promissory note. This note, dated November 2, 1993, was due on demand and provided for 10% per annum interest. Someone wrote "void" over the face of the Skarupa note, evidencing that he had been released from his obligation.

The plaintiff did not give any money to Mrs. Wright again until around February 1994. At this time, Mrs. Wright asked for significantly more money. Nervous about the amounts of cash she had already given, the plaintiff hesitated. The court finds, however, that Mrs. Wright suggested that the plaintiff should take out a mortgage on her home and that County Produce would make the mortgage payments. [FN4] The plaintiff testified that both Mr. and Mrs. Wright assured her that they would prepare a promissory note that she could enforce should Mrs. Wright default on the loan.

> FN4. The financing vehicle was exclusively Mrs. Wright's idea in order to allay plaintiff's concerns about repayment.

*3 Mrs. Wright accompanied the plaintiff to the meetings with the mortgagee bank and to the closing where the plaintiff was able to obtain a loan in the amount of $125,000. The check advanced was for $99,389.04. The proceeds of this loan were to go towards paying off the home equity loan that the plaintiff took out in 1992 as well as a $75,000 business loan procured by County on which plaintiff gave her own personal guaranty.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

Page 3

After the rescission period, the check arrived at the office of the bank's lawyers. The plaintiff, however, could not immediately obtain the check because it was a snowy day and she did not wish to drive. Mr. Wright offered to retrieve the check, which he did. He then drove to the plaintiff's residence where he had her endorse the check. He did not furnish her with any promissory notes as were agreed. The plaintiff testified that she had repeatedly asked Mr. and Mrs. Wright for notes to back these debts but was later rebuffed.

Various payments were made on the four transactions, which the court shall discuss in turn. The last recorded payment, however, occurred on June 2, 2001.

On January 17, 2002, the plaintiff filed the present application for a **prejudgment remedy**. Attached to the application is an affidavit averred by the plaintiff and a proposed complaint. [FN5] The complaint is fairly characterized as a proceeding on a series of debts. [FN6]

> FN5. The proposed complaint provides in full:
> 1. Between January 30, 1992 and February 3, 1994, [the plaintiff] lent approximately $195,000.00 to or for the benefit of the defendants, Linda A. Wright, Gerald B. Wright and David I. Nyden.
> 2. In consideration thereof, the defendants agreed to repay [the plaintiff] with interest.
> 3. Payments were made upon the indebtedness through and including May 2001 but the defendants have failed and neglected to make any payments since.
> 4. Despite demand, the defendants refuse and neglect to pay.

> FN6. On the record the day of the hearing, the plaintiff attempted to amend her proposed complaint. The court, in its discretion disallowed this procedure based upon due process considerations because the plaintiff attempted to add new causes of action for the first time.

I

The court begins by reviewing the standards for a **prejudgment remedy**. A "**prejudgment remedy**" means any **remedy** that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of his property prior to final judgment. *Fermont Division v. Smith*, 178 Conn. 393, 398, 423 A.2d 80 (1979), quoting General Statutes § 52-278a(d). The purpose of a **prejudgment remedy** is to preserve the assets while a matter is being litigated. *Rosenberg v. Rosenberg*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356640 (January 5, 1999, Frankel, J.).

General Statutes § 52-278d authorizes a trial court to issue a prejudgment attachment upon a determination of **probable cause** to sustain the validity of the plaintiff's claim. *Calfee v. Usman*, 224 Conn. 29, 36, 616 A.2d 250 (1992). The legal idea of **probable cause** is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. *New England Land Co., Ltd. v. DeMarkey*, 213 Conn. 612, 620, 569 A.2d 1098 (1990).

The hearing in **probable cause** for the issuance of a **prejudgment remedy** is not contemplated to be a full scale trial on the merits of the plaintiff's claim. This weighing process applies to both legal and factual issues. *Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 156, 595 A.2d 872 (1991). In ruling on an application for a **prejudgment remedy**, the court is limited to the evidence produced at the hearing. *South Mill V. Assn. v. Still Hill Development Corp.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 563009 (April 27, 1998, Lavine, J.), citing *McCahill v. Town & Country Associates, Ltd.*, 185 Conn. 37, 39, 440 A.2d 801 (1981).

II

*4 Although the proposed complaint's details are sparse, the plaintiff argues that she seeks an attachment for the $55,000 promissory notes solely against Mrs. Wright and Nyden. The defendants have raised several defenses in regard to these notes which the court shall consider.

A

The court finds that the plaintiff has met her **probable cause** standard and shown that she is the holder of the note signed by Mrs. Wright. "[T]he holder of the instrument" may enforce the instrument. General Statutes § 42a-3-301. "A person is not liable on an instrument unless ... the person signed the instrument ..." General Statutes § 42a-3-401.

Mrs. Wright attacks the validity of the debt upon

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 4
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
**(Cite as: 2002 WL 1492179 (Conn.Super.))**

three grounds and she also asserts one special defense. She contends that the debt is not due and owing because: (1) when the parties made their agreement, Mrs. Wright informed the plaintiff that she might not be able to pay the note, and thus as a condition precedent to her personal obligation to pay the note, she would have to be able to affiliate with County Produce; (2) that the money forwarded was a capital contribution and not a debt; and (3) that when the plaintiff later replaced the Skarupa note with the Nyden note, she also had agreed to release Mrs. Wright from any personal obligation.

These three theories are contradictory, however, in Connecticut a defendant may bring inconsistent theories upon which to defend. *Hoard v. Sears Roebuck & Co.*, 122 Conn. 185, 192, 188 A. 269 (1936). All of the first three theories also call upon the court to weigh the testimony and decide the credibility of the various witnesses.

At the hearing, the plaintiff testified that Mrs. Wright came to her requesting a loan. The plaintiff acknowledged that she was aware that the $55,000 loan was going to be used as capital to start County Produce. She generally testified that no conditions were placed upon the lending of the money except that the check was to be made out to Skarupa because Mrs. Wright was not able to have any money in her own name.

Mrs. Wright's testimony differed. Mrs. Wright testified that, while she had prepared the note, she had told the plaintiff that she may not be liable for the underlying debt because she might possibly have to sign a non-compete clause due to the settlement of the Bernstein litigation. Although this settlement never materialized, she was precluded from affiliating with a produce company due to her violation of PACA. On the stand, Mrs. Wright also testified that the $55,000 that had started as a loan was later made into a contribution at the organizational meeting. She testified to this even though she admitted on the stand that the participants of the meeting did not discuss canceling the notes that the plaintiff held.

The court finds the plaintiff's testimony to be more credible and makes the finding that her testimony was accurate. Several reasons lead the court to its conclusion. First, Mrs. Wright admitted that she never discussed canceling the note when the debt supposedly was converted into an investment. Second, in a document titled "Interest Calculation," Mrs. Wright wrote out what the interest calculation would be for $55,000 per annum from January 30, 1992 to December 31, 1996. [FN7] Most significant to the court about this document is that it is evidence that Mrs. Wright knew that she owed interest on a debt and her payments to the plaintiff were not returns on an investment. Third, the plaintiff demonstrated in her case that Mrs. Wright continued to pay on her debt even after County Produce ceased operations. Mrs. Wright herself testified that after County Produce lost its license and ceased to do business, she formed another produce company, American Fruit & Banana (American) for the sole purpose of trying to re-pay some of County Produce's creditors and "investors." American did make some payments to the plaintiff. For these reasons, the court finds that the plaintiff has shown by a **probable cause** standard that the debt belonged to Mrs. Wright and not to County Produce. Moreover, the payment record shows that the debt was not canceled. Accordingly, the plaintiff has demonstrated a factual predicate that she is likely to prevail upon this claim against Mrs. Wright.

> FN7. There is some discrepancy between the interest calculation document and the actual promissory note. The note itself requires at least 8% interest. The interest calculation, however, shows interest at 5%. No reasonable explanation was given for this discrepancy by any party. The court notes, however, that the document was prepared by Mrs. Wright and the change in the interest rate benefits her. This discrepancy does not undercut the plaintiff's claim.

*5 Mrs. Wright contends, however, that the plaintiff has not met her burden because her claim is barred by the **statute** of **limitations**. General Statues § 42a-3-118 provides in relevant part that "an action to enforce the obligation of a party to pay a note payable at a certain time must be commenced within six years after the due date or dates stated in the note ..." The note was due on January 30, 1994, meaning that the plaintiff would have had to commence suit by January 30, 2000.

Although the plaintiff filed her action after January 30, 2000, certain events may toll the **statute** of **limitations**. Partial payment of a debt which is barred by the **statute** of **limitations** removes a case from the statute provided that, under the circumstances, it constitutes an acknowledgment of the indebtedness sued upon as a then existing debt. *Zapolsky v. Sacks*, 191 Conn. 194, 198, 464 A.2d 30 (1983). The **Statute** of **Limitations** creates a defense to an action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

It does not, however, erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. *Id.* Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the **statute** of **limitations** is a question for the trier of fact. *Id.*

At the hearing the plaintiff introduced a record of payments. The record was introduced with no objection by the defendants and no testimony by Mrs. Wright contradicts this record. The evidence shows that Mrs. Wright made payments on the $55,000 debt until September 11, 1997. [FN8] The court finds that the plaintiff has met her burden to demonstrate that Mrs. Wright made payments until 1997. Moreover, the court finds that Mrs. Wright's payments constitute an unequivocal acknowledgment of the debt. No evidence revealed that the amount of the debt was disputed before litigation began. It is of no moment that Mrs. Wright now contests the debt. Mrs. Wright's self-serving characterization that the $55,000 represented an investment is undercut by the fact that she continued to make interest payments, never disputing that they were due, even though County Produce had gone out of business.

> FN8. The record is for the combined $55,000 debt and the $15,000 monies advanced. The payments are not segregated towards either debt. This detail, however, is immaterial as to the tolling of the **statute** of **limitations** for such a document showing both debts evidences an acknowledgment of both debts.

Accordingly, the court finds that the plaintiff has shown by the recognized **probable cause** that she could prevail against Mrs. Wright for the $55,000 note. Mrs. Wright's defense of **statute** of **limitations** is unavailing as her payments tolled the **statute** of **limitations** until 1997 and the claim was filed in 2002.

B

The court finds that the plaintiff is the holder of the Nyden note as well. At the hearing, Nyden admitted the validity of the debt and that, by signing the instrument, he made himself liable for the debt.

Post-hearing, however, Nyden has raised one legal issue. Nyden argues that the note lacks consideration and, therefore, it is unenforceable.

Before determining what consideration is due, the court must first determine what type of agreement the plaintiff has proven was between her and Nyden. The court finds that the evidence shows that it was a novation of Skarupa's obligation.

*6 Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. *Bushnell Plaza Development Corp. v. Fazzano*, 38 Conn.Sup. 683, 688, 460 A.2d 1311 (App.Sess.1983). A recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the second contract. If the second contract contains terms inconsistent with the former so that the two cannot stand together, it exhibits characteristics indicating a substitute contract. *Id.* "[A]n essential element of any novation is the extinguishing of the original contract by substitution of a new one." *Flagg Energy Development Corp. v. General Motors Corp.*, 244 Conn. 126, 145, 709 A.2d 1075 (1998). The plaintiff has shown by **probable cause** that she had an obligation from Skarupa. Skarupa, however, wished to no longer be held to that obligation. As a result, the plaintiff agreed to release Skarupa from his obligation in exchange for an obligation from Nyden. The terms of the obligation between Nyden and Skarupa differed. First, Nyden's note was due on demand whereas the first note was due at a time certain. Second, the Nyden note provided for a higher interest rate than the Skarupa note. These facts evidence a new obligation from Nyden.

As this note evidences a novation, the court must determine whether the plaintiff has shown, by **probable cause**, that there was consideration for the Nyden debt. "A simple novation involving a substitution of obligors results when an obligee promises the obligor that he will discharge the obligor's duty in consideration for a third person's promise to pay the obligee ... A substitution of obligors may also result when an obligee promises a third person that he will discharge the obligor's duty *in consideration* for the third person's promise to render either the performance that was due from the obligor or some other performance." (Emphasis added.) 2 Restatement (Second), Contracts § 280, comment (d) (1981). [FN9]

> FN9. While the Connecticut appellate courts have yet to formally adopt § 280 of the Restatement (Second) of Contracts, the Connecticut Supreme Court has cited the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                         Page 6
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

tentative draft of § 280 as authority for its decision. *Soneco Service, Inc. v. Bella Construction Co.*, 175 Conn. 299, 301, 397 A.2d 1364 (1978) (per curiam).

As the plaintiff demonstrated, the consideration in the novation is that the plaintiff agreed to release Skarupa from his obligation in exchange for Nyden being obligated to pay the $55,000 debt at 10% interest per annum. [FN10] Accordingly, because Nyden has no defense to the debt which he acknowledged in his testimony, the plaintiff has demonstrated the probability that he could be found liable at trial.

> FN10. Nyden argues that the consideration cannot be the discharge of the Skarupa note because the $55,000 debt was used by County Produce and not by Skarupa. Nyden asserts that because Skarupa was not a shareholder of County Produce and that he turned over the funds that were advanced to him once County became a corporation, he could not be held liable on the debt. The court finds this evidence to be irrelevant as to who is liable for the $55,000 debt. The plaintiff has proven by **probable cause** that Skarupa initially agreed to be held liable for the $55,000 debt if the plaintiff advanced the funds. It is of no moment that Skarupa was not a stockholder in County Produce.

### III

The plaintiff attempts to hold Linda and Gerald Wright liable for the $25,000 loan advanced by a series of checks. The Wrights argue that the plaintiff has failed to demonstrate that they borrowed the money with the intention of paying it back. Failing that argument, the defendants raise the **statute of limitations** defense.

### A

As for Mrs. Wright, the court finds that the plaintiff has demonstrated by **probable cause** that she gave a loan to Mrs. Wright.

At the hearing, the plaintiff testified that Mrs. Wright approached her for the $25,000 loan. She testified that Mrs. Wright proclaimed an urgency, but that she had forgotten why the funds were so urgently needed. As a result of Wright's proclamation, plaintiff made out a series of checks over time payable to Mrs. Wright. Mrs. Wright promptly cashed each of the checks.

*7 Mrs. Wright denied this testimony on the basis that this money was an investment from the plaintiff into County Produce. The court, however, does not credit Mrs. Wright's testimony on this point. First, Mrs. Wright's family had extraordinary expenses during the period of time that plaintiff lent her the proceeds. Mrs. Wright and her husband were required to pay their attorney in order to file a petition for bankruptcy. They additionally decided to purchase a condominium during this time and began to refurbish the condominium. All of this was done while Mrs. Wright earned no income. This testimony raises the inference that Mrs. Wright needed money during this period of time. Second, the checks were made out to Mrs. Wright personally. If her testimony that this was an investment were to be given credit, then one must wonder why the checks were not made out to County Produce or why the plaintiff did not receive any shares evidencing her investment. Given the weight that the court accords the plaintiff's testimony, it concludes that the plaintiff has shown that she lent the money to Mrs. Wright personally.

Mrs. Wright raises the defense of **statute of limitations**. For an action on a debt contract, General Statutes § 52-576 is the applicable **statute of limitations**. *Cupina v. Bernklau*, 17 Conn.App. 159, 162-63, 551 A.2d 37 (1988). Section 52-576(a) provides in relevant part that "[n]o action for an account, or on any simple or implied contract ... shall be brought but within six years after the right of action accrues ..." The last loan was made when the plaintiff issued the last check on April 23, 1992. The court must first determine when the cause of action accrued.

While the **statute of limitations** normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action. *Wynn v. Metropolitan Property & Casualty Ins.*, 30 Conn.App. 803, 807-08, 623 A.2d 66 (1993), aff'd., 228 Conn. 436, 635 A.2d 814 (1994). The testimony did not reveal any terms attached to the lending of the $25,000. The plaintiff did testify that the loan was supposed to be a short-term loan that would be paid once Mrs. Wright obtained a loan from a bank. The plaintiff estimated that this would be a "few months" at the most.

In an action for breach of contract, the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 7
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

*Tolbert v. Connecticut General Life Ins. Co.*, 257 Conn. 118, 124, 778 A.2d 1 (2001). Giving the plaintiff's testimony weight, six months could be the most time equaling a "few months." That would place the injury on October 23, 1992. The cause of action, therefore, would expire on October 23, 1998.

The tolling principles discussed in Part II A operate for this debt. The plaintiff, in her post-hearing brief, argues that payments were made until 2001. The court, however, has found no proof that Mrs. Wright has made any payments on the debt. The plaintiff put forth evidence of payments on several other debts, but has not shown the court that Mrs. Wright has acknowledged this debt through payment.

*8 Accordingly, the plaintiff has not demonstrated that she is likely to prevail on her claim of the $25,000 loan because it is barred by the **statute of limitations**. Therefore, a **prejudgment remedy** cannot issue on the $25,000 debt.

B

The court must next determine whether the plaintiff has proven that *Mr.* Wright can be held liable for the debt. The court finds that she has not.

The plaintiff offered no evidence that Mr. Wright is liable on the debt. The only evidence suggests that Mr. Wright benefited from the debts. Near the time the plaintiff issued the checks to Mrs. Wright, Mr. Wright needed to pay his attorney in order to file his bankruptcy. Also, he deposited money on a new condominium and refurbished the condominium. Mr. Wright denied any direct benefit.

Whether the court credits Mr. Wright's testimony is immaterial. Mrs. Wright could have gratuitously given the funds to Mr. Wright after the plaintiff advanced the funds to Mrs. Wright.

In her post-trial brief, the plaintiff has argued that the court should hold Mr. Wright liable on the basis of unjust enrichment. The court, however, does not read the allegations of the proposed complaint to allege a cause of action sounding in unjust enrichment. The proposed complaint clearly alleges a debt action by using the terms "consideration," "indebtedness" and "demand." None of these allegations indicate an unjust enrichment action.

It is black letter law that one may not recover on a cause of action not alleged. Our Appellate Court has reaffirmed this principle as recently as last year stating:

Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them ... The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise ... The principle that a plaintiff may rely only upon what he has alleged is basic ... It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint ... A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery.

(Citations omitted; internal quotation marks omitted.) *Bartomeli v. Bartomeli*, 65 Conn.App. 408, 412, 783 A.2d 1050 (2001).

Furthermore, the court may not premise a **prejudgment remedy** on a claim which was not part of the operative complaint at the time of the hearing. See *Dornfield v. Granquist,* Superior Court, judicial district of New Britain at New Britain, Docket No. CV 00 0502628 (March 13, 2001, Shapiro, J.).

It has been held that where a party has not pleaded unjust enrichment that a court should not grant relief based upon the unpleaded theory. See *Gould v. Hall,* 64 Conn.App. 45, 53-54, 779 A.2d 208 (2001) (finding that it was proper for a court to accept an attorney trial referee's report finding no liability on a counterclaim when that counterclaim merely pleaded a contract action and not unjust enrichment). Accordingly, the court cannot give effect to the plaintiff's unjust enrichment argument.

IV

*9 The plaintiff seeks to hold both Mr. and Mrs. Wright liable for the debt secured by the mortgage. The court credits the testimony of the plaintiff where she said that Mrs. Wright agreed to repay the $125,000. The evidence reveals that, contrary to the defendants' assertions that the amount represented a loan to County Produce, Mrs. Wright continued to pay on the mortgage well after County Produce ceased operations. A record prepared by the plaintiff reveals that mortgage payments were made at the direction of Mrs. Wright from April 1, 1994 to June 12, 2001. This evidence indicates that Mrs. Wright understood that the debt was her personal obligation.

As for Mr. Wright, the court finds that he did not owe an obligation to repay the debt. The plaintiff

Not Reported in A.2d                                                                                           Page 8
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

argues that she had a direct contract with Mr. Wright. She has not, however, produced any evidence of such a contract. At most, she had assurances from Mr. Wright that he would prepare promissory notes to her in order to allow her to have some security. Such evidence might constitute an inference that he induced the plaintiff to take out the mortgage. The evidence, however, does not contain an inference that the two parties reached a meeting of the minds. Accordingly, Mr. Wright cannot be shown to be liable on the $125,000 debt.

Mrs. Wright also seems to argue that she is only responsible for $99,389.04 because that is the amount of check that the plaintiff received and gave over to Mrs. Wright. The court finds, however, that the agreement was for Mrs. Wright to pay the full $125,000 mortgage. Moreover, the plaintiff eventually repaid the full amount to the mortagee bank on her own. Accordingly, the court shall use that amount, less payments, when figuring the amount of the attachment.

V

The plaintiff also seeks an attachment based upon the $15,000. She seeks this attachment as to Mrs. Wright only.

Mrs. Wright argues that the plaintiff has not shown that she is liable for the $15,000 debt. Mrs. Wright contends that it was their understanding that this was a debt to County Produce and not a personal obligation.

While the plaintiff did make out the $15,000 check to County Produce, the plaintiff testified that Mrs. Wright instructed her to do so. Moreover, Mrs. Wright treated the $15,000 loan the same as the original $55,000 loan. She prepared loan repayment schedules for the $15,000. She also made interest payments after County Produce ceased operations. Accordingly, the court finds that the plaintiff has proven by **probable cause** that Mrs. Wright owes on the $15,000 loan.

Mrs. Wright has raised the defense of **statute of limitations** under § 52-576. As discussed in Part III A, the cause of action accrues at a breach. The breach on the $15,000 did not occur until non-payment of the debt. Mrs. Wright made her last payment on September 11, 1997. Accordingly, the plaintiff is not barred by the **statute of limitations** until September 11, 2003. For this reason, the defense of **statute of limitations** is inapplicable.

VI
*10 The plaintiff has requested that the court grant the application for a **prejudgment remedy** against the defendants in the amount of the principal debt plus agreed-upon interest and statutory interest pursuant to General Statutes 37-3a. [FN11] The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. *Killion v. Davis*, 69 Conn.App. 366, 375, 791 A.2d 552 (2002). Before awarding interest, the trial court must ascertain whether the defendant has wrongfully detained money damages due the plaintiff. Interest on such damages ordinarily begins to run from the time it is due and payable to the plaintiff. *Id.* The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. *Id.*

> FN11. General Statutes § 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year; and no more, may be recovered and allowed in civil actions ... including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."

The court finds that the demands of justice require allowing the plaintiff to have a **prejudgment remedy** in the amount of the principal and by the amount of interest. Based upon the findings detailed in this memorandum of decision, the court grants the **prejudgment remedy** as to Mrs. Wright and Nyden.

The court has found that the plaintiff has sustained her burden as to Mrs. Wright on three debts: the $55,000 note, the $15,000 loan and the $125,000 mortgage loan. As for the $55,000 note, the evidence has shown that the parties agreed to 8% interest per annum on the debt. On 8% interest, the debt produces $4,400 of interest a year. The note, being unpaid for ten years, has accumulated interest in the amount of $44,000. Adding to the unpaid principal of $55,000, the total due would be $99,000 before crediting any payment.

The evidence also showed that Mrs. Wright owed on the unpaid balance of $15,000. The court finds that it is appropriate to charge 5% interest against that debt. The only evidence adduced at the hearing regarding interest on the $15,000 debt was that Mrs. Wright calculated interest in the amount of 5% from the time the debt was forwarded to her. Accordingly, the court finds that the interest on the debt was at 5%, which is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)
(Cite as: 2002 WL 1492179 (Conn.Super.))

Page 9

$750 a year. The $15,000 was unpaid for ten years. Accordingly, without payment, the defendant owed the plaintiff $22,500 ($15,000 plus $7,500).

The evidence adduced at the hearing was that Mrs. Wright has paid on both these debts. The court is uncertain as to how to allocate the payments to which debt. In its discretion, therefore, the court shall subtract the payments from the combined total owed on both debts. The court finds that Mrs. Wright paid a total of $7797.25 on the debts ($55,000 and $15,000). The two debts (principal and interest) total $121,500. Subtracting the payments made, the court finds that the plaintiff is entitled to a prejudgment attachment in the amount of $113,702.75 ($121,500 less $7,797.24).

As for the $125,000 note, the court declines to award interest based upon this amount. The plaintiff has demonstrated that Mrs. Wright paid some interest on the debt, but has failed to show how much interest Mrs. Wright has paid. Moreover, the debt was a variable interest mortgage, making a determination of the interest impossible to determine. Accordingly, the court finds that the plaintiff may have a **prejudgment remedy** in the amount of $125,000 for the mortgage debt.

*11 As for the Nyden note, it provides for 10% interest per annum on its face. The court has found that the plaintiff has demonstrated by **probable cause** that Nyden is liable for the debt in the amount of $55,000. That note has been unpaid for nine years. The amount of interest, at the stated 10% per annum rate, would be $5,500 per year. After nine years, the interest totals $49,500. Added to the $55,000 principal, the total amount of the attachment would be $104,500. The plaintiff, however, has only asked the court for a **prejudgment remedy** in the amount of $100,000 against Nyden. Accordingly, the court shall order a **prejudgment remedy** in the amount of $100,000. [FN12]

> FN12. This amount does not reflect the payments on the debt made by Mrs. Wright. As stated previously, it is impossible to determine the allocation of the payments she made to the $55,000 debt. The court notes, however, that if it subtracted the full payments of $7797.25 from Nyden's debt, Nyden is still liable for 103,702.75. Accordingly, because this amount exceeds the amount the plaintiffs have asked for, the court shall still order a **prejudgment remedy** in the amount requested.

## CONCLUSION

For the reasons herein stated, the court grants the application for a **prejudgment remedy** against Mrs. Wright in the amount of $138,702.75 which it rounded out to $139,000. It also grants the application for a **prejudgment remedy** as to Nyden in the amount of $100,000. As for Mr. Wright, the court finds that the plaintiff has not met her burden as to him.

Not Reported in A.2d, 2002 WL 1492179 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.